**CLARK v. GIFFORD–HILL & CO., Inc.**

**Civ. A. 2911.**

United States District Court
W. D. Louisiana, Opelousas Division.

Oct. 23, 1951.

See also, D.C., 95 F.Supp. 975.

880

Malcolm E. Lafargue, Shreveport, La., Sol B. Pressburg, Alexandria, La., for plaintiff.

Stafford & Pitts, Alexandria, La., for defendant.

DAWKINS, Chief Justice.

This case was tried to a jury on a claim for damages arising from the pollution of Turkey Creek, caused by the defendant in its gravel operations. There was a verdict in the plaintiff's favor in the sum of $1500. The matter is now before the court on the prayer of the same complaint for an injunction against further pollution.

Since the application for the writ was submitted to the Judge on the record made up in the trial of the claim for damages, defendant has asked to have the case re-opened for the purpose of considering evidence of a change of conditions which it claims has removed the danger of further pollution. The court suggested that the evidence be taken as to such changes before the motion to re-open was heard by the court, without prejudice, to be considered if the court concluded it should do so in finally determining the rights to such writ. The matter was again argued and sub-mitted, first, as to whether the case should be reopened, and, if so, as to the effects of this new evidence.

■ After due consideration, the court is of the view that the case should be reopened and this evidence considered. The record, as thus added to, established the following facts: At the time this suit was filed and for a considerable period prior thereto, defendant had been digging or mining gravel in a certain area of its property, consisting of approximately one hundred acres, which were so situated that large areas of lands and small streams drained and flowed into its gravel pit by gravity, which caused a continued increase of muddy water as more space was provided in removing the top soil and the gravel. This lake in some places was dug to such depths that it has formed a deep body of water which is still muddy from the wash of its gravel and the inability of the water to escape because of the levee. In efforts both before and since this suit was filed to keep the water from escaping into Turkey Creek, defendant first diverted the stream from its old channel, which flowed through and over the gravel bed in a course from northeast to southwest, and dredged a channel to a point further south and a connection with Turkey Creek as it came out of the gravel bed below the levee on the southwest. Dams and levees were then built along the southern and westerly borders of the lake thus made to prevent the muddy water in it from overflowing into the creek. The water shed of Turkey Creek and of the area surrounding the lake or pit was such that during hard rains and high waters, it would overflow into Turkey Creek, muddying that stream for a considerable distance downstream, and was responsible for the damages claimed in this case

These levees still remain with a substantial quantity of water in this lake, which for the above reasons, when rain and high waters come, still overflows into Turkey Creek, although defendant no longer uses it for digging or washing gravel.

The evidence taken since the trial on the merits, as above stated, reasonably establishes that the water shed surrounding the present or new lake where operations are now carried on, are nothing like as large as the old one, and that the defendant has built levees which make it reasonably certain that there will be no overflowing of the muddy waters from it, either into the old lake or Turkey Creek in the future.

■ However, the problem of preventing, with the coming of heavy rains and the high-water season, the present muddy contents of the old lake, and such additional waters as will be added thereto, from over-

flowing into Turkey Creek, as has been done in the past, still remains. The defendant created this condition in the pursuit of its private business, and of course will be liable for whatever damage it may cause in the future, until it is corrected. The Vice-President and General Superintendent of the defendant, in his testimony which has now been admitted for consideration, swore that the State Conservation Department, no doubt meaning the Stream Control Commission, has approved a disposition of this accumulated muddy water, which would consist of returning Turkey Creek to its former channel, cutting all levees, and permitting the accumulated polluted water to drain out into that stream for once and for all. He testified that once this was done, the lake and creek running through it would clear up and the two would constitute a single body of water equally fit for fishing and other uses, the same as any other part of the stream. This plan seems logical, since there does not appear to be any reasonable likelihood that defendant will add any more muddy water either to the old lake or to Turkey Creek. It was further stated that this operation should be carried on at high-water stage, so that the muddy water would run off as rapidly as possible, probably in the winter months, when there would be less fishing by the sportsmen than otherwise in the spring, summer or fall. However, this theory and permanent correction of the trouble remains to be carried out and proven; and until something along that line has been done, the obligation rests upon the defendant either to prevent further damage by pollution or to respond in damages which may be caused through the artificial conditions thus created.

In these circumstances, it is the view of this court that the defendant should be restrained from further polluting Turkey Creek until it has, under the authorization and supervision of the Stream Control Commission, returned this old lake area to the normal conditions which prevailed before the gravel operations began.